**In re MECHEM FINANCIAL INC., Debtor.**

**W. James SCOTT, Jr., Movant,**

**v.**

**MECHEM FINANCIAL INC. and Robert G. Dwyer, Esq., Trustee, Respondents.**

**Bankruptcy No. 90–00193E.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 24, 1993.

James R. Walczak, Erie, PA, for W. James Scott, Jr.

John O. Dodick, Erie, PA, for trustee.

James E. Blackwood, Erie, PA, for Michael Q. Lebron and Michael C. Lebron.

Mark L. Glosser, Pittsburgh, PA, for Campbell Community Funeral Homes.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Mechem Financial, Inc. ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on March 23, 1990. A Chapter 11 Trustee was appointed five days later on March 28, 1990. The case was converted to a case under Chapter 7 on May 22, 1990. Presently before the Court is a Motion for Allowance of Administrative Expense Pursuant to § 503(b) ("Motion") filed by W. James Scott, Jr. ("Scott").

Scott asserts that he incurred actual, necessary charges of $48,805.12 in attorney's fees and $10,207.88 in expenses in preserving or recovering property of the bankruptcy estate and in making a substantial contribution to the case. Scott requests payment of $59,013.00 from the bankruptcy estate as an administrative expense pursuant to § 503 of the Bankruptcy Code.

Robert G. Dwyer, Esq. ("Trustee"), the Chapter 7 Trustee, requests that the Court grant the Motion to the extent that Scott incurred fees and expenses for postpetition services which substantially contributed to the bankruptcy estate and that the Court grant such a fee enhancement as appropriate. Although the Trustee would allow a

fee enhancement for postpetition fees and expenses, he understands the law to require denial of fees and expenses for prepetition services.

Michael Q. Lebron and Michael C. Lebron (collectively "Lebron") object to the Motion. Lebron asserts that it is inequitable to compensate Scott, one of the Debtor's principals, for doing no more than what he should have done to mitigate the Debtor's fraud while victims of the Debtor's fraud (the unsecured creditors) will suffer substantial losses. Lebron further alleges that Scott is not eligible to proceed under § 503 as he was not a creditor of the Debtor at the time the Debtor's Petition was filed and that Scott did nothing which directly resulted in the recovery of property of the estate.

Campbell Community Funeral Homes ("Campbell") also objects to the Motion. Campbell asserts that § 503 does not permit payment for prepetition services as a postpetition administrative expense; that the prepetition fees and expenses were not incurred for the benefit of all creditors; that Scott fails to qualify for recovery of postpetition fees and expenses under § 503; and that it is unfair to unsecured creditors for Scott, as a shareholder and insider, to be paid for rendering services which he was statutorily required to perform.

### Facts

This case involves corrupt and illegal activities of a magnitude rarely seen before this Court. The Debtor corporation was engaged in the business of managing trust funds advanced from individuals through funeral directors for funeral goods and services under preneed funeral contracts.

The Debtor's President, John R. Copple ("Copple"), lived a lavish lifestyle—siphoning off the trust funds for his personal use to the tune of millions of dollars which he used for luxury vehicles, spectacular jewelry, furs and a magnificent home furnished with the best furnishings money could buy. Copple's wife took weekend buying trips to New York City spending thousands of dollars each trip on clothing, crystal and jewel-

ry—all paid for with funds which the Debtor supposedly held in trust.

Copple operated in several states. Mechem Financial of Ohio, Inc. filed an earlier bankruptcy case in Ohio in 1988. Allegations of misallocated assets arose in that case, but there, the Debtor was able to skirt the allegations—we suspect by transferring a portion of this Debtor's assets to Ohio. *See In re Mechem Financial of Ohio, Inc.*, 92 B.R. 760 (Bankr.N.D.Ohio 1988).

On February 28, 1990, Scott, who was a minority shareholder of the Debtor, filed a Complaint in Equity in the Court of Common Pleas of Erie County, Pennsylvania against the Debtor, its officers, directors and majority shareholders and certain holders of trust funds, whereby Scott sought the following relief:

(a) appointment of a custodian to prevent further mismanagement, waste and dissipation of trust funds and further illegal, oppressive and fraudulent actions toward minority shareholders by directors, officers and shareholders;

(b) an accounting of the assets held by the Debtor, including pre-need trust funds in the possession and control of all defendants;

(c) an injunction against all defendants enjoining disbursement, transfer or other disposition of pre-need trust funds and the proceeds thereof; and

(d) a declaration that certain transfers and issues of corporate stock by John R. Copple were void.

The Complaint in Equity filed by Scott against the Debtor resulted from facts Scott learned through discovery initiated pursuant to a separate action in mandamus filed by Scott against the Debtor in 1988 in the Court of Common Pleas of Erie County, Pennsylvania.

At the behest of Scott, the walls started closing in on Copple and the Debtor. By Order dated March 6, 1990, the Honorable Roger M. Fischer ("Judge Fischer") of the Court of Common Pleas directed the Debtor and Copple to file inventories of all assets, investments and accounts held by them or in which they had an ownership

interest on or before March 12, 1990. When the Debtor and/or Copple failed to file a satisfactory listing, Scott, on March 16, 1990, filed a Motion to Compel Filing of Proper Inventories.

By Order dated March 19, 1990, Judge Fischer directed the Debtor and Copple to file, on or before 4:30 p.m. on March 26, 1990:

(a) amplified inventories identifying the full name and address of any persons or entities listed on any asset or liability;

(b) the location of each asset and liability;

(c) the nature and location of the documentation, if any, to support each asset and liability; and

(d) a statement as to how the value of each asset or liability was determined.

The Order further required a complete and detailed listing of each gem or rare coin owned or held by the Debtor and/or Copple and directed that the Debtor and/or Copple file, on or before 4:30 p.m. on April 2, 1990, copies of all documents which substantiate any of the assets or liabilities listed on the inventories.

Feeling the grasp of the blockade around him, Copple sought to escape Scott's clinch by putting the Debtor into a voluntary Chapter 11 on March 23, 1990.

Scott relentlessly pursued. On March 27, 1990, Scott filed a Motion for Appointment of Trustee, for Expedited Accounting, and for Partial Relief from Stay which this Court granted on March 28, 1990. The Trustee was appointed on March 28, 1990.

Scott delivered to the Trustee all of the information obtained through its prepetition legal actions against the Debtor. The information provided by Scott contributed to the Trustee's report of investigation filed promptly with this Court on April 24, 1990 identifying various assets and summarizing the history of questionable financial transactions between the Debtor and:

(a) the Debtor's president, John R. Copple, and his wife, Mary Copple;

(b) the Debtor's affiliates, which were also under the control and management of John R. Copple;

(c) separate corporations of which John R. Copple was the majority shareholder and person in control; and

(d) persons associated with John R. Copple through various affiliates of the Debtor or separate business entities under the control of John R. Copple.

Upon the recommendation of the Trustee, this case was converted to Chapter 7 on May 23, 1990. The Trustee presently holds $460,000 in cash from the liquidation process. In addition, the Trustee has successfully prosecuted numerous adversary proceedings seeking turnover of property of the estate against Copple, Copple's wife and others.

The Trustee has obtained a judgment against John R. Copple for $4,009,645 and against John R. Copple and his wife, Mary Copple, for $1,307,567. The judgments of this Court have been appealed by the Copples. The Trustee estimates that if he is successful on appeal and is able to liquidate the personal assets of the Copples, an additional $400,000–700,000 will be available for distribution to creditors.

Despite all of the Trustee's efforts in this case, the unsecured creditors will suffer substantial losses. Total claims exceed $4,500,000. Most of the individual purchasers of preneed funeral trusts will be spared from any significant losses, however, because of the efforts of the Trustee to provide a mechanism for funeral directors to provide those individuals with fully funded replacement trusts with which most funeral directors are complying. To date, 851 individual trusts have been replaced totalling $2,657,824. Scott assisted the Trustee in this effort. Scott has provided funerals for its preneed clients who have died and replacement trusts for its living individual clients in the amount of $64,548.51 and Scott, as a creditor, has an unsecured claim as a creditor of this estate for those expenditures.

As for Copple, he currently resides at the Federal Corrections Institute in Milan, Michigan following his conviction in the United States District Court on three counts of tax evasion and 34 counts of mail fraud.

### Discussion

■ Scott seeks reimbursement of his attorney's fees and expenses as an administrative expense under § 503(b) of the Bankruptcy Code. § 503(b) provides in pertinent part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

(B) ...

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

.    .    .    .    .

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor; ...

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b).

The information gathered by Scott in his prosecution of matters against the Debtor was critical to the Court in making an immediate determination to appoint a Trustee and critical to the Trustee in making a prompt investigation and report to the Court which resulted in conversion of this case to Chapter 7. Scott's information also assisted the Trustee in the subsequent collection of assets for the benefit of creditors of the estate.

Scott's efforts were more than just a passing benefit to the estate. The efforts of Scott were a substantial contribution in assisting the Trustee to carry out his responsibilities. Scott's efforts far exceeded those which he was obligated to perform.

Scott's elucidation of facts in the Common Pleas Court brought the Debtor's illicit activities to light and was the catalyst for the bankruptcy filing. Armed with the knowledge it had gained in the Common Pleas Court action, Scott promptly moved this Court to appoint a Trustee which immediately put the Debtor's assets out of its and Copple's control and ceased the bleeding of the estate. The prompt appointment of a Trustee at Scott's behest clearly bestowed a direct benefit upon the estate and all of its creditors by preventing further dissipation of the Debtor's remaining assets.

Given the background surrounding the filing of this bankruptcy Petition as set forth in the facts, the benefit Scott bestowed upon this estate is clear—absent Scott's pursuit of this Debtor, the Debtor lead by Copple might still be fleecing individuals into investing in the Debtor's preneed trusts. Copple could still be diverting the Debtor's assets to his own uses. There might be no estate for unsecured creditors.

■ Lebron implies that the Trustee in this case is reaching an unsuccessful result. We disagree. Most, if not all of the individual preneed trust purchasers, will receive the funeral they anticipated and the unsecured creditors will receive some dividend from this estate. Without Scott's efforts, the result could have been much worse—the Debtor could have continued to operate until all of the assets were dissipated.

We find that all of Scott's efforts for which he incurred fees and expenses both prepetition and postpetition resulted in a direct benefit and were a substantial contribution to the estate. Any fees and expenses which Scott incurred prepetition substantially contributed to the administration of the Debtor's estate postpetition. Thus, there is more than sufficient reason

to reimburse Scott for fees and expenses in their entirety. Certainly, if Scott were entitled to only postpetition fees and expenses, he would be entitled to a fee enhancement on the postpetition fees in an amount equivalent to his prepetition fees.

For the above reasons, we have by separate Order dated February 4, 1993, allowed Scott an administrative expense pursuant to § 503(b) in the amount of $48,805.12 as reimbursement of attorney's fees and $10,-207.88 in expenses.